1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY DOMINICK MANCINI,<br><br>                    Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security,<br><br>                    Defendant. | Case No. EDCV 14-2122 JC<br><br>MEMORANDUM OPINION |

**I.    SUMMARY**

On October 22, 2014, plaintiff Larry Dominick Mancini ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits.  The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The Court has taken both motions under submission without oral argument.  See Fed. R. Civ. P. 78; L.R. 7-15; October 24, 2014 Case Management Order ¶ 5.

///

///

1

1   Based on the record as a whole and the applicable law, the decision of the

2   Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

3   ("ALJ") are supported by substantial evidence and are free from material error.[1]

4   **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5   **DECISION**

6   On November 10, 2011, plaintiff filed an application for Supplemental

7   Security Income.  (Administrative Record ("AR") 168).  Plaintiff asserted that he

8   became disabled on June 1, 1997 (later amended to November 10, 2011), due to

9   schizophrenia, thought disorder, hearing voices, and diabetes.  (AR 10, 190).  The

10  ALJ examined the medical record and heard testimony from plaintiff (who was

11  represented by counsel), plaintiff's father, and a vocational expert on May 20,

12  2013.  (AR 31-72).

13  On May 29, 2013, the ALJ determined that plaintiff was not disabled

14  through the date of the decision.  (AR 10-26).  Specifically, the ALJ found:

15  (1) plaintiff suffered from the following severe impairments:  diabetes mellitus

16  with lower extremity neuropathy, history of pancreatic pseudo cyst (status post

17  drainage), history of renal disease, acute pancreatitis with necrosis and obstructive

18  jaundice, failed endoscopic retrograde cholangiopancreatography,

19  gastroesophageal reflux, necrotic mandible with exposed mandible intra-orally,

20  facial tissue infection and cellitus, osteomyelitis in mandible, vestibuloplasty of ½

21  mandible arch, extraction of dental roots, excision of cutaneous fistula tract, left

22  neck abscess (status post drainage), psychotic disorder, schizoaffective disorder

23  (bipolar type), schizophrenia (paranoid type), and history of polysubstance abuse

24  in reported remission (AR 12); (2) plaintiff's impairments, considered singly or in

25  combination, did not meet or medically equal a listed impairment (AR 13);

26

27

28  [1]The harmless error rule applies to the review of administrative decisions regarding
    disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (citations omitted).

(3) plaintiff retained the residual functional capacity to perform light work

(20 C.F.R. § 416.967(b)) with additional limitations[2] (AR 14); (4) plaintiff had no

past relevant work (AR 24); (5) there are jobs that exist in significant numbers in

the national economy that plaintiff could perform, specifically assembler of small

products, office helper, and cleaner (housekeeping) (AR 25); and (6) plaintiff's

allegations regarding his limitations were not entirely credible (AR 17).

The Appeals Council denied plaintiff's application for review.  (AR 1).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is

unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012)

(quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted).  The

impairment must render the claimant incapable of performing the work the

claimant previously performed and incapable of performing any other substantial

gainful employment that exists in the national economy.  Tackett v. Apfel, 180

F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step

sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity?  If

        so, the claimant is not disabled.  If not, proceed to step two.

---

[2]The ALJ determined that plaintiff:  (i) could lift 20 pounds occasionally and 10 pounds
frequently; (ii) could stand and walk 6 hours in an 8-hour day with a sit stand option in 2 hour
intervals; (iii) must avoid hazards such as machinery and heights; (iv) is limited to simple
instructions; (v) cannot do fast-paced work; and (vi) cannot have intense interaction with
coworkers, supervisors, and the public.  (AR 14).

(2)    Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)    Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B.   Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

1   (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable
2   mind might accept as adequate to support a conclusion."  Richardson v. Perales,
3   402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a
4   mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing
5   Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

6       To determine whether substantial evidence supports a finding, a court must
7   "'consider the record as a whole, weighing both evidence that supports and
8   evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.
9   Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
10  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
11  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
12  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

13  **IV.    DISCUSSION**

14      **A.    The ALJ Properly Evaluated the Opinions of Plaintiff's Treating**
15             **Psychiatrist**

16             **1.    Pertinent Law**

17      In Social Security cases, courts give varying degrees of deference to
18  medical opinions depending on the type of physician who provided them, namely
19  "treating physicians," "examining physicians," and "nonexamining physicians."
20  Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation
21  marks omitted).  A treating physician's opinion is generally given the most weight,
22  and may be "controlling" if it is "well-supported by medically acceptable clinical
23  and laboratory diagnostic techniques and is not inconsistent with the other
24  substantial evidence in [the claimant's] case record[.]"  20 C.F.R. § 416.927(c)(2);
25  Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citations and quotation marks
26  omitted).  An examining, but non-treating physician's opinion is entitled to less
27  weight than a treating physician's, but more weight than a nonexamining
28  physician's opinion.  See id. (citation omitted).

A treating physician's opinion is not necessarily conclusive, however, as to a claimant's medical condition or disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject a treating physician's uncontroverted opinion by providing "clear and convincing reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion conflicts with another doctor's opinion, an ALJ may reject the treating opinion "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Id. (quoting Reddick, 157 F.3d at 725) (quotation marks omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); see also Magallanes, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). Nonetheless, an ALJ "must do more than offer [] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

## 2.    Analysis

In a December 21, 2012, Riverside County Mental Health Narrative Report ("December Report") Dr. Yoon Kim, plaintiff's treating psychiatrist, diagnosed plaintiff with schizophrenia (paranoid) and stated, among other opinions, that plaintiff (i) experienced hallucinations and delusions that influenced plaintiff's behavior; (ii) had mild to moderate impairment in several mental functions; and

6

1  (iii) would be unable to complete a 40 hour work week without decompensating.

2  (AR 634).  Dr. Kim documented similar findings in a March 13, 2013, Narrative

3  Report ("March Report") (collectively "Dr. Kim's Opinions").  (AR 925).

4  Plaintiff contends that the ALJ improperly rejected Dr. Kim's Opinions.

5  (Plaintiff's Motion at 7-16).  The Court disagrees.

6      First, the December and March Reports each essentially consists of a single

7  page of check-the-box opinions.  (AR 634, 925).  As the ALJ suggested, in part,

8  the brief, vague, and conclusory comments at the bottom of each form simply

9  reiterate in a conclusory manner the check-box findings, do not clearly document

10  specific clinical findings (*i.e.*, results of objective psychological testing), and do

11  little to explain Dr. Kim's conclusions to the extent they reflect significant mental

12  limitations beyond those already included in the ALJ's residual functional capacity

13  assessment for plaintiff.  (AR 21, 634, 925).  The ALJ properly rejected Dr. Kim's

14  Opinions, in part, on this basis.  See, e.g., Crane v. Shalala, 76 F.3d 251, 253 (9th

15  Cir. 1996) ("ALJ [] permissibly rejected [medical evaluations] because they were

16  check-off reports that did not contain any explanation of the bases of their

17  conclusions."); De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009)

18  (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of

19  the bases of their conclusions.'") (citing id.); see also Murray v. Heckler, 722 F.2d

20  499, 501 (9th Cir. 1983) (expressing preference for individualized medical

21  opinions over check-off reports).[3]

22      Second, the ALJ also properly rejected Dr. Kim's Opinions because they

23  were inconsistent with and inadequately supported by the physician's own

24

25

26      [3]The ALJ was not, as plaintiff argues (Plaintiff's Motion at 9, 14-15), required to recontact Dr. Kim to obtain clarification for the check-box opinions.  See De Guzman, 343 Fed.

27  Appx. at 209 (ALJ has no obligation to recontact physician to determine the basis for opinions expressed in "check-off reports that d[o] not contain any explanation of the bases of their

28  conclusions.") (citation and internal quotation marks omitted).

7

treatment notes.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005)
("The ALJ need not accept the opinion of any physician, including a treating
physician, if that opinion is brief, conclusory, and inadequately supported by
clinical findings.") (citation and internal quotation marks omitted); Connett v.
Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly
rejected where treating physician's treatment notes "provide no basis for the
functional restrictions he opined should be imposed on [the claimant]").  For
example, Dr. Kim's treatment notes generally document visits by plaintiff simply
for medication management, and note that plaintiff complied with the medication
he was prescribed and reported no side effects, that plaintiff's mental status
examinations showed various mental symptoms and limitations but consistently
revealed no "risk factors" and were otherwise "not unusual" and, in fact, even
showed some improvement in plaintiff's condition.  (AR 21) (citing Exhibit 10F at
9-17 [AR 637-45]; Exhibit 14F [AR 926-30]).  The ALJ reasonably concluded that
Dr. Kim's vague and conclusory references to "one or two past episodes" (i.e.,
"episode of breaking furniture at home", "[history] of being in a group home";
"poor self control when he was in group home") were insufficient to support
broader findings regarding plaintiff's "decompensation and [] complete inability to
do work."  (AR 22; 634, 925).  The ALJ also reasonably concluded that, on the
whole, Dr. Kim's treatment records were summary in nature, and relied heavily on
plaintiff's subjective complaints.  (AR 21-22; see, e.g., AR 637, 640-44, 664-65
[noting plaintiff's reports of "hearing voices three or four days [per] week" and
"auditory hallucination (vague about the content of hallucination)"]; 637 [plaintiff
"anxious about upcoming jaw surgery"]; 638 [plaintiff reports "isolating at home,"
father reports plaintiff "does not do anything at home"]); See, e.g., Bayliss, 427
F.3d at 1217 (ALJ properly rejected opinion of treating physician which was based
solely on subjective complaints of claimant and information submitted by
claimant's family and friends).  To the extent plaintiff suggests that Dr. Kim's

8

medical records, or the medical record as a whole, are actually consistent with the more significant mental limitations found by Dr. Kim (Plaintiff's Motion at 10-14), this Court will not second guess the ALJ's reasonable determination to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

Third, the ALJ properly rejected Dr. Kim's conclusory, check-box opinions that plaintiff could "[not] complete [a] 40 hour work week without decompensating."  (AR 21, 634, 925); cf. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation only when rejecting "significant probative evidence") (citation omitted).  Non-medical opinions that plaintiff is disabled or unable to work are not binding on the Commissioner.  See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); 20 C.F.R. § 416.927(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . .  A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").

Fourth, the ALJ properly considered Dr. Kim's limited "longitudinal treating relationship with [plaintiff]" as a factor that reduced the weight to be afforded Dr. Kim's Opinions.  See 20 C.F.R. § 416.927(c)(2) (ALJ may consider, among multiple factors, "[l]ength of the treatment relationship and the frequency of examination" by the physician when determining the weight to afford treating physician's opinion).  For example, as the ALJ noted, Dr. Kim had seen plaintiff

9

1    on only a few occasions prior to completing the December Report, and had seen

2    plaintiff at most two additional times prior to completing the March Report.  (AR

3    21-22, 632, 637-39, 641-44, 664-66, 927-29).

4        Finally, the ALJ properly rejected Dr. Kim's Opinions in favor of the

5    conflicting opinions of the psychiatric consultative examiners, Dr. David R. Block

6    and Dr. Reynaldo Abejuela, and the state-agency medical consultants, Drs. Gilson

7    and Loomis, all of whom opined that plaintiff had some mild to moderate

8    limitations in mental functioning – especially with respect to social functioning,

9    and concentration, attention, persistence, and pace – but, as the ALJ later

10   concluded, plaintiff nonetheless retained the residual functional capacity at least to

11   understand and remember simple directions.  (AR 22) (citing AR 81-83 [Mark

12   Gilson, Ph.D.]; AR 97-99 [K. Loomis, M.D.]; AR 272-73 [Dr. Block]; AR 448-49

13   [Dr. Abejuela]).  The opinions of Drs. Block and Abejuela were supported by each

14   physician's independent examination of plaintiff (AR 270-71, 445-46), and thus,

15   without more, constituted substantial evidence upon which the ALJ could properly

16   rely to reject Dr. Kim's Opinions.  See, e.g., Tonapetyan v. Halter, 242 F.3d 1144,

17   1149 (9th Cir. 2001) (examining physician's opinion on its own constituted

18   substantial evidence, because it rested on physician's independent examination of

19   claimant) (citations omitted).  The state-agency medical consultants' opinions also

20   constituted substantial evidence supporting the ALJ's decision since they were

21   supported by the other medical evidence in the record as well as the opinions and

22   underlying independent examinations by Drs. Block and Abejuela.  See id.

23   (holding that opinions of nontreating or nonexamining doctors may serve as

24   substantial evidence when consistent with independent clinical findings or other

25   evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995)

26   ("[R]eports of [a] nonexamining advisor need not be discounted and may serve as

27   substantial evidence when they are supported by other evidence in the record and

28   are consistent with it.").

1    Accordingly, a remand or reversal on this basis is not warranted.

2    **B.    The ALJ Did Not Fail Adequately to Develop the Record**

3    Plaintiff essentially argues that a remand is required because the ALJ failed,

4    *sua sponte*, to order additional consultative mental and physical examinations of

5    plaintiff.  (Plaintiff's Motion at 16-17).  The Court disagrees.

6    **1.    Pertinent Law**

7    Although plaintiff bears the burden of proving disability, the ALJ has an

8    affirmative duty to assist the claimant in developing the record "when there is

9    ambiguous evidence or when the record is inadequate to allow for proper

10   evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir.

11   2001) (citation omitted); Bustamante, 262 F.3d at 954; see also Webb v. Barnhart,

12   433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty fully and fairly to develop

13   record and to assure that claimant's interests are considered).  Where it is

14   necessary to enable the ALJ to resolve an issue of disability, the duty to develop

15   the record may require consulting a medical expert or ordering a consultative

16   examination.  See 20 C.F.R. § 416.919a; see, e.g., Armstrong v. Commissioner of

17   Social Security Administration, 160 F.3d 587, 590 (9th Cir. 1998) (where there

18   were diagnoses of mental disorders prior to the date of disability found by the

19   ALJ, and evidence of those disorders even prior to the diagnoses, the ALJ was

20   required to call a medical expert to assist in determining when the plaintiff's

21   impairments became disabling).

22   The ALJ is not obliged to undertake the independent exploration of every

23   conceivable condition or impairment a claimant might assert.  Therefore, an ALJ

24   does not fail in his duty to develop the record by not seeking evidence or ordering

25   further examination or consultation regarding a physical or mental impairment if

26   no medical evidence indicates that such an impairment exists.  See Breen v.

27   Callahan, 1998 WL 272998, *3 (N.D. Cal. May 22, 1998) (noting that, in the

28   Ninth Circuit, the ALJ's obligation to develop the record is triggered by "the

11

1  presence of some objective evidence in the record suggesting the existence of a

2  condition which could have a material impact on the disability decision")

3  (citations omitted).

4           **2.    Analysis**

5           Here, the ALJ did not find, nor does the record reflect, that the medical

6  evidence was ambiguous or insufficient as a whole to permit the ALJ to make a

7  disability determination.  Plaintiff's conclusory argument that additional

8  examinations would generally help "assure that plaintiff's interests were fully and

9  fairly considered and that the record was fully and fairly developed" (Plaintiff's

10  Motion at 17) is insufficient to trigger a duty to order consultative examinations

11  for plaintiff at government expense – especially considering that the record

12  already contains multiple such examinations.  See Breen, 1998 WL 272998, at *3

13  (decision to order consultative examination rests within ALJ's discretion and such

14  examination is "only required when the record establishes that such an

15  examination is necessary to enable the ALJ to resolve the issue of disability")

16  (citations omitted); see also Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001)

17  ("The government is not required to bear the expense of [a consultative]

18  examination for every claimant) (citing 20 C.F.R. §§ 404.1517-1519t,

19  416.917-919t).

20           Accordingly, a remand or reversal on this basis is not warranted.

21  **V.    CONCLUSION**

22           For the foregoing reasons, the decision of the Commissioner of Social

23  Security is affirmed.

24           LET JUDGMENT BE ENTERED ACCORDINGLY.

25  DATED:  June 30, 2015

26           _____
                                        /s/
27           Honorable Jacqueline Chooljian
             UNITED STATES MAGISTRATE JUDGE
28